Marc Cook
Cook & Kelesis, LTD
517 South 9th Street
Las Vegas, Nevada 89101
Telephone: (702) 385-3788
Facsimile: (702) 737-7712

Steven L. Woodrow
swoodrow@woodrowpeluso.com*
Patrick H. Peluso
ppeluso@woodrowpeluso.com*
WOODROW & PELUSO, LLC
3900 East Mexico Ave., Suite 300
Denver, CO 80210

*pro hac vice
Attorneys for Plaintiff
MICHAEL JAFFEY, individually
and on behalf of all others similarly situated,

(Additional Counsel Appearing on Signature Page)

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL JAFFEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEL TACO RESTAURANTS, INC., a Delaware corporation,<br><br>Defendant. | No. 5:17-CV-02600-JCM-PAL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS, OR IN THE ALTERNATIVE, COMPEL ARBITRATION AND DISMISS THE ACTION (DKT. 14, 15)** |

# TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................................................1

II. STATEMENT OF FACTS..................................................................................................3

III. ARGUMENT .....................................................................................................................3

    A.      THE COURT SHOULD NOT STAY THESE PROCEEDINGS.....................4

           1.  Whether Jaffey entered into an arbitration agreement does not depend on the Supreme Court's resolution of *Morris*. ....................................................4

           2.  Del Taco won't suffer any prejudice if a stay is denied. ...............................6

    B.      THE ARBITRATION AGREEMENT IS NOT VALID AND SHOULD NOT BE ENFORCED AS A MATTER OF LAW .....................................................7

           1.  Jaffey denies signing the Agreement—a factual dispute thus exists, and this dispute cannot be resolved on a Motion to Dismiss ...............................8

           2.  Del Taco's "Mutual Agreement to Arbitrate Claims" is unconscionable. .9

                 a.  Del Taco's presentation of the Agreement to Jaffey was procedurally unconscionable. ...............................................................9

                 b.  The Agreement contains several one-sided terms that make it substantively unconscionable..................................................................12

    C.      THE COURT SHOULD ALLOW DISCOVERY INTO ARBITRATION-RELATED ISSUES. ..........................................................................................14

IV. CONCLUSION .................................................................................................................15

**TABLE OF AUTHORITIES**

*CASES*

*Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320 (9th Cir. 2015) .........................................8

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......................................................9, 13

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ....................................................................8

*Carter v. Rent-A-Center, Inc.*, No. 16-15835, 2017 WL 6333769 (9th Cir. Dec. 12, 2017) .........12

*Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250 (Nev.2012)........................................8

*Cohn v. Ritz Transp., Inc.*, No. 2:11-CV-1832 JCM NJK,
    2014 WL 1577295 (D. Nev. Apr. 17, 2014) .............................................................................10

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008)......................................................8

*D.R. Horton v. Green*, 96 P.3d 1159 (Nev. 2004) ..............................................................9, 10, 12

*D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013) .........................................................5 n.1

*Dees v. Billy*, 357 Fed. Appx. 813 (2009).......................................................................................10

*Edwards v. Oportun, Inc.*,
    No. 16-cv-00519-EDL, 2016 WL 4203853 (N.D. Cal. June 14, 2016).....................................6

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) ..................................................12

*Hesse v. Sprint Spectrum, L.P.*, No. C06-0592JLR,
    2012 WL 37399 (W.D. Wash. Jan. 9, 2012) ............................................................................14

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)...........................................................8

*Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052 (9th Cir. 2013)...............................................8, 12

*Kindred v. Second Judicial District Court*, 996 P.2d 903 (Nev. 2000) ........................................10

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) .....................................................................................6

*Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016) ...................................................5 n.1

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ................................................................6

*Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th Cir. 2016)................................................. *passim*

*Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756 (9th Cir. 1997) .........................................8

*Obstetrics and Gynecologists v. Pepper*, 693 P.2d 1259 (Nev. 1985)..........................................10

*Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013) .......................................................5 n.1

*Simms v. Navient Solutions, Inc.*, 157 F. Supp. 3d 870 (D. Nev. 2016) .........................................9

*Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) .............................................5 n.1

*Zeitchick v. Lucey*, 495 F. App'x 792 (9th Cir. 2012).......................................................8

**STATUTES**

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ...................................................................1

## I.    INTRODUCTION

This case challenges serial violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA" or the "Act") by Defendant Del Taco Restaurants, Inc. ("Defendant" or "Del Taco"). Specifically, the FCRA requires employers to provide job applicants and employees with a "standalone" disclosure informing the applicant/employee that the employer might procure a background check about him or her. The Act further requires that employers, prior to taking any adverse action against an applicant/employee, provide the applicant or employee with a copy of the background check and a summary of the applicant/employee's rights under the FCRA.

Del Taco simply ignores these requirements wholesale by: (1) using an FCRA disclosure that fails to standalone (*i.e.*, it is riddled with extraneous information), and (2) routinely taking adverse action against applicants/employees without first providing the applicant/employees with copies of their background checks or summaries of their FCRA rights. Following a hearing on the merits, Plaintiff Michael Jaffey ("Plaintiff" or "Jaffey") will be able to show that every employee and applicant, including himself, is entitled to between $100 and $1,000 under the Act for each violation.

In an effort to dodge what amounts to clear liability—and hoping to deny Jaffey his day in court—Defendant moves to stay the case and also asserts that an arbitration agreement, supposedly agreed to by Jaffey during the application process, precludes him from proceeding in any court. (Dkt. 14.)

Fortunately for Jaffey and the thousands of applicants and employees who've had their FCRA rights similarly violated, Defendant's Motion to Stay the Proceedings, or in the Alternative, to Compel Arbitration and Dismiss the Action ("Motion") must be denied on both grounds.

First, the motion to stay should be denied because this Court's determination of whether Jaffey agreed to be bound by Del Taco's form arbitration agreement—and thus whether a valid arbitration agreement exists—does not depend on the United States Supreme Court's resolution of the question presented by *Morris v. Ernst & Young, LLP*. The question presented in *Morris* is

whether an arbitration agreement can require employees to waive all concerted legal activity, including class arbitration. A decision by the Supreme Court either way on that issue will have no bearing on the determination of whether Jaffey agreed to arbitrate his claims in the first place. Though Del Taco's form arbitration agreement contains a waiver of class or representative proceedings (*see* Mutual Agreement to Arbitrate Claims (the "Agreement" or "Contract") (Dkt. 27-2 ¶ 4)), the enforceability of this provision is irrelevant here if Jaffey did not sign the Agreement or if the Agreement is otherwise unenforceable. Additionally, denying a stay would not prejudice Del Taco.

Next, regarding Del Taco's alternative motion to compel arbitration, the Agreement is invalid and cannot be enforced against Jaffey for at least two reasons. First, Jaffey denies signing the Agreement. (*See* Declaration of Michael Jaffey, attached hereto as "Exhibit A," at ¶ 9.) The Agreement itself does not bear his name or signature, and the acknowledgement page— submitted as an exhibit by Defendant in conjunction with the agreement—contains only his typed name. (*See* Agreement, Dkt. 27-2; Acknowledgement, Dkt. 27-3.) Jaffey cannot be denied his day in court by a contract to which he was never a party. Second, even if the Court finds that Jaffey was indeed a party to the Agreement, the manner in which this Agreement was presented to Plaintiff (or as Jaffey asserts, not presented at all) was procedurally unconscionable. Plaintiff never received the Agreement and had no opportunity to discuss the agreement or its provisions with his supervisors or an attorney. (Ex. A at ¶ 9, 11.) Further, the Contract is, by its terms, a condition placed upon new or continued employment. (*See* Agreement, Dkt. 27-2, at 1.) These conditions, paired with inequality of bargaining power and no real negotiations, make this Agreement unconscionable.

While in general the FAA requires the Court to compel arbitration of claims where a valid and enforceable agreement to arbitrate exists, no such agreement should be found here. Yet even if an agreement exists, Del Taco cannot enforce it. Accordingly, and as explained further below, the Court should deny Del Taco's Motion to Stay Proceedings or Compel Arbitration and allow the case to move forward.

## II.     STATEMENT OF FACTS

Defendant Del Taco is a publicly-traded restaurant chain based in Lake Forest, California. (Compl. ¶ 12.) The Company has a network of 550 restaurant locations in 15 states, and it has over 7,000 employees. (*Id.* at ¶¶ 13-14.)

In or around May 2017, Plaintiff Jaffey applied for work with Del Taco using its online application process. (Ex. A at ¶ 2.) Jaffey provided his electronic signature at the end of the application to certify that his materials were true and accurate. (*Id.* at ¶ 3. )

Shortly after Jaffey applied, he was hired by Del Taco as a team member, and the restaurant located at 2531 East Craig Road, North Las Vegas, NV 89030 was his primary workplace. (Compl. ¶ 16.) During his first day of employment, Plaintiff watched and completed training videos, but he did not receive or sign an arbitration agreement. (Ex. A at ¶¶ 8-9.)

After one month of employment, Jaffey was informed by his supervisor that Del Taco had procured a background check about Jaffey and that he had failed and was fired. (Compl. ¶ 19.) Jaffey did not receive any pre-adverse action notice or a copy of his consumer report before he was terminated, and he did not receive a copy of his background check until three months after he was fired. (*Id.* at ¶¶ 20-21.) He only received this report because he called to request a copy. (*Id.* at ¶ 21.)

Plaintiff filed his Class Action Complaint on October 5, 2017 in the District of Nevada. (Dkt. 1.) Defendant filed its Motion to Stay the Proceedings, or in the Alternative, to Compel Arbitration and Dismiss the Action on November 21, 2017. (Dkt. 14, 15.)

## III.     ARGUMENT

Defendant's Motion should be denied in its entirety. First, a stay is inappropriate because the applicability of the Agreement to Jaffey does not depend on the Supreme Court's resolution of the *Morris* case. Second, the alternative motion to compel arbitration and dismiss the case should be denied because a factual dispute exists as to whether Jaffey entered into the Contract. Further, even if this factual dispute is resolved in Del Taco's favor, Del Taco's presentation of the arbitration agreement to Jaffey, paired with its adhesive nature, render the Contract

unconscionable. At the very least, discovery should be allowed regarding Jaffey's supposed entrance into and the validity of the Agreement.

For all of these reasons, and as explained further below, the Court should deny Defendant's Motion to Stay or Compel Arbitration.

### A.     THE COURT SHOULD NOT STAY THESE PROCEEDINGS

As explained below, a stay is inappropriate in light of the inapplicability of the *Morris* case to the preliminary factual question of whether Jaffey agreed to arbitrate his claims. Additionally, Del Taco would suffer no prejudice if the Court denies its Motion to Stay.

### 1.     Whether Jaffey entered into an arbitration agreement does not depend on the Supreme Court's resolution of *Morris*.

Defendant has moved the Court to stay these proceedings in anticipation of a decision by the Supreme Court on the validity of *Morris* and other related cases. (Motion, Dkt. 14, at 4.) While a decision in *Morris* will certainly bear on the facial validity of Del Taco's form arbitration agreement, and its class action waiver in particular, the decision will have no bearing on the determination of whether Plaintiff actually agreed to arbitrate his claims—that is, whether Jaffey even entered into the Contract in the first place. If discovery confirms that Jaffey never agreed to arbitrate his claims, then the resolution of *Morris* would not affect his claims at all. Defendant has not demonstrated a need to stay the proceedings, especially in light of this factual dispute, and thus its Motion should be denied.

As Del Taco accurately states in its brief, the Ninth Circuit held in *Morris* that the NLRA precludes arbitration agreements that "foreclose the possibility of concerted work-related legal claims." *Morris v. Ernst & Young LLP*, 834 F.3d 975, 990 (9th Cir. 2016). Though the case concerns the legality of a class waiver in an arbitration agreement, the Court was careful to note that *Morris* "is a labor law case, not an arbitration case." *Id.* at 989. "Irrespective of the forum in which disputes are resolved, employees must be able to act in the forum *together*." *Id.* (emphasis in original). In other words, *Morris* concerns not whether an employee can waive his right to a class action in court, but whether an employer may also ask him to waive his right to class

4

*arbitration*, assuming that arbitration is the agreed-upon forum for dispute resolution. The Supreme Court's decision on the validity of *Morris* and related cases in other Circuits[1] will determine the rights of employees to maintain their collective bargaining abilities, regardless of legal forum.

Del Taco's concern for the outcome of *Morris* is well-placed, as the Supreme Court could invalidate the class waiver provisions of countless form arbitration agreements, including the form employed by the Defendant. Del Taco's "Mutual Agreement to Arbitrate Claims" asks employees to give up "any right [they] may have to be a plaintiff or class member in *any purported class or representative proceeding . . .*" (Agreement, Dkt. 27-2, at ¶ 4.) This purports to eliminate both class action lawsuits *and* class arbitration. If the Supreme Court agrees with the Ninth Circuit that this sort of waiver violates the NLRA's protection of collective bargaining rights, Del Taco employees who entered into this agreement would potentially be permitted, at the very least, to arbitrate their claims as a class—at most, the invalidity of the class waiver provisions would erode the Agreement entirely and enable class action lawsuits.

Regardless of how the Supreme Court rules on *Morris*, the provisions of Defendant's Agreement can only apply to employees who have actually agreed to arbitrate their claims—that is, those who accept the terms of the Agreement. Here, Plaintiff contends that he never entered into this agreement. (Ex. A at ¶ 9.) Indeed, Jaffey states that he never saw the agreement, he never discussed arbitration with his employers or an attorney, and he did not provide his signature to anything but a certification of his online job application. (*Id.* at ¶¶ 9-11.) At this point, Del Taco has only provided an acknowledgement page with Plaintiff's typed name on it to support its claim that he entered into the Agreement. (*See* Acknowledgement, Dkt. 27-3.)

In light of these differing positions, a factual dispute exists here regarding the applicability of the arbitration agreement to Jaffey's claims. This factual dispute cannot be

---

[1] *Compare Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013), *and Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013), *and D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013), *with Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016).

resolved without discovery, and it must be resolved before the Court can determine whether the *Morris* decision will play a potential role. While Defendant urges the Court to "kick the can" and remain idle until *Morris* is decided, the parties can engage in discovery and resolve this preliminary factual determination, which may obviate the applicability of *Morris* to this action altogether.

Defendant points to a handful of cases that have been stayed pending *Morris*, and it points as well to guidance by the NLRB to "stop pursuing attacks on arbitration agreements containing class and collective action waivers" until the issue is resolved. (Motion, Dkt. 14 at 9.) However, this is not an action challenging Del Taco's arbitration agreement: Jaffey has brought suit challenging Del Taco's violations of the FCRA. The collective bargaining issue presented in *Morris* will be ancillary—if discovery proves it to be relevant at all—to the disposition of this case. Despite the Defendant's assertions to the contrary, it would be inappropriate to stay these proceedings and wait for a decision that may have no bearing on Jaffey's case and certainly has no bearing on the factual dispute at hand.

### 2. Del Taco won't suffer any prejudice if a stay is denied.

While Defendant outlines the *Landis* factors and contends that they "weigh heavily in favor" of staying these proceedings (Mot. at 5), Del Taco has failed to meet its own obligation to prove any hardship that it would suffer if a stay is not granted. To grant a stay, the proponent must show "a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Being required to defend a suit does not amount to prejudice, hardship, or inequity. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."); *see also Edwards v. Oportun, Inc.*, 2016 WL 4203853, *5 (N.D. Cal. June 14, 2016) ("Although Uber may suffer hardship, in the form of additional discovery, the Court concludes that this potential hardship does not merit a stay in this case.").

While Defendant will have a burden in responding to discovery requests, that burden is not significant enough to demonstrate "a clear case of hardship or inequity." Rather, Del Taco's

burden is the same it faces with defending itself in any litigation. Defendant argues that, if the Court fails to grant a stay, the parties "would spend substantial resources on the related appeal(s)" and "unnecessary and wasteful discovery will occur." (Motion, Dkt. 14 at 6.) However, this speculation is inconsistent with Del Taco's characterization of the imminence of the *Morris* ruling. By Defendant's own estimation, the Supreme Court's decision in *Morris* could come "*mere months* from now." (*Id.* at 7.) If that divination is correct, the ruling would likely arrive before the conclusion of discovery on the factual dispute of Jaffey's entrance into the contract—an issue that will determine whether *Morris* is relevant to this action at all.

Moreover, in any event, Defendant will still be required to respond to discovery regarding whether Jaffey was a party to the arbitration agreement. That is, even if the *Morris* case is decided in favor of permitting waiver of all concerted actions, there will still be a factual dispute as to the enforceability of the Agreement against Plaintiff. He denies signing it, and the document does not bear his signature. Thus, regardless of whether *Morris* changes the NLRA's treatment of arbitration agreements, Del Taco will still need to produce discovery regarding Jaffey's alleged assent to the supposed agreement.

In short, the significance of *Morris* to this action is uncertain, and it would be imprudent to stay the entire case and avoid resolving preliminary factual disputes that could determine whether *Morris* will have any bearing on Jaffey's claims. Further, Del Taco has failed to show a clear case of hardship or inequity that will occur if this action proceeds without delay. Accordingly, the Court should exercise its discretion and deny Defendant's Motion to Stay.

**B.     THE ARBITRATION AGREEMENT IS NOT VALID AND SHOULD NOT BE ENFORCED AS A MATTER OF LAW.**

As an alternative to its Motion to Stay, Defendant asks the Court to compel arbitration and dismiss the case. (Motion, Dkt. 14 at 10.) The Court should reject this Motion as well. The Agreement that Del Taco points to as the basis for compelling arbitration is invalid and unenforceable against Plaintiff for at least two reasons. First, as explained above, Plaintiff disputes that he ever received, signed, or agreed to the Agreement or its terms. Thus, a factual

dispute exists, and at the very least discovery should be permitted on this issue. Second, even if, *arguendo*, discovery resolves the factual dispute in Del Taco's favor, the arbitration agreement that was allegedly presented to and signed by Jaffey is unconscionable. For these reasons, and as explained below, Defendant's alternative Motion to Compel Arbitration and Dismiss the Action should be denied.

**1. Jaffey denies signing the Agreement—a factual dispute thus exists, and this dispute cannot be resolved on a Motion to Dismiss.**

The first reason the Court should deny the Motion is that no arbitration agreement was ever formed. In determining whether to compel arbitration, the Court must first determine whether a valid agreement to arbitrate exists. *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756 (9th Cir. 1997). A court may compel arbitration only after it has determined "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002)). Thus, the party seeking to compel arbitration has the burden under the FAA to show that there is a valid, written agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). The issue of whether a contract exists is a question of fact. *Zeitchick v. Lucey*, 495 F. App'x 792, 795 (9th Cir. 2012) (citing *Certified Fire Prot. Inc. v. Precision Constr.,* 283 P.3d 250, 255 (Nev.2012)).

Del Taco fails to meet its burden here. As discussed above, Jaffey contends that he never saw, received, or signed the "Mutual Agreement to Arbitrate Claims." (Ex. A at ¶ 9.) Accordingly, the only evidence that Del Taco has supplied to assert Jaffey's agreement is the separate Acknowledgement page, which features Jaffey's name typed out on both a "printed name" line and a signature line. (Acknowledgement, Dkt. 27-3.) The Agreement itself, on the other hand, contains neither Jaffey's name (typed or otherwise) nor his signature, let alone a space for these items to be written. (Agreement, Dkt. 27-2.) Del Taco presents no evidence that

the Acknowledge page was presented in conjunction with the supposed Agreement (or that the Agreement itself was shown to Jaffey at all). Anyone could have typed in his name.

In short, Jaffey disputes the existence and formation of a contract requiring Plaintiff to arbitrate his claims against Del Taco. As recognized in *Zeitchick*, this is a question of fact, and it is a gateway issue that must be settled before the Court can grant a motion to compel arbitration. By moving to compel arbitration against Jaffey, who disputes the existence of any such agreement to arbitrate between himself and Del Taco, Del Taco is attempting to circumvent the Court's threshold determination of arbitrability. In light of this factual dispute, the Court should deny Defendant's Motion to Compel Arbitration.

**2. Del Taco's "Mutual Agreement to Arbitrate Claims" is unconscionable.**

To the extent that the Court finds that Jaffey did in fact enter into an agreement to arbitrate (it should not), the Agreement is nevertheless unconscionable under Nevada law.

An arbitration agreement is susceptible to the same contract defenses as any other contract. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). One of those contractual defenses is unconscionability. Under Nevada law, both procedural and substantive unconscionability are required. *Simms v. Navient Solutions, Inc.*, 157 F. Supp. 3d 870, 877 (D. Nev. 2016). A sliding scale is applied—"[l]ess evidence of substantive unconscionability is required in cases involving great procedural unconscionability. The reverse is also true." *Id.* (citing *D.R. Horton v. Green*, 96 P.3d 1159, 1162 (Nev. 2004)).

As explained below, Del Taco's "Mutual Agreement to Arbitrate Claims" is both procedurally and substantively unconscionable.

**a. Del Taco's presentation of the Agreement to Jaffey was procedurally unconscionable.**

Under Nevada Law, a contract clause is procedurally unconscionable "when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Simms*, 157 F. Supp. 3d at 877; *Green*, 96 P.3d at

1162. A contract of adhesion is "a standardized contract form offered to consumers . . . on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain." *Dees v. Billy*, 357 Fed. Appx. 813, 815 (2009). A distinctive feature of adhesion contracts is that the weaker party has no choice as to its terms. *Obstetrics and Gynecologists v. Pepper*, 693 P.2d 1259, 1260 (Nev. 1985).

The Nevada Supreme Court, however, has not applied the contract of adhesion doctrine alone to invalidate employment agreements. *See Kindred v. Second Judicial District Court*, 996 P.2d 903, 907 (Nev. 2000). "[T]he fact that a mandatory arbitration agreement is a contract of adhesion does not, *by itself*, render the agreement unenforceable." *Cohn v. Ritz Transp., Inc.*, No. 2:11-CV-1832 JCM NJK, 2014 WL 1577295, at *14 (D. Nev. Apr. 17, 2014) (emphasis added). Thus, the Court must consider both whether the contract is oppressive, which springs from "inequality of bargaining power [that] results in no real negotiation and an absence of meaningful choice," and whether the contract constitutes a surprise. *Id.* (alteration in original). The Ninth Circuit in turn, applying Nevada law, has reversed compelled arbitration when the agreement to arbitrate was an adhesion contract. *See Dees*, 357 Fed. Appx. at 815-16. The Court noted, however, that a contract of adhesion may be enforceable if the party seeking enforcement can prove: (1) plain and clear notification of the contract terms; (2) understanding consent by the signatory; and (3) that the clause falls within the reasonable expectations of the weaker party. *Id.*

The Agreement at issue here is procedurally unconscionable for several reasons. First, it is adhesive, presented on a take-it-or-leave-it basis, and is a condition of employment. By its terms, Jaffey's employment becomes "consideration" for the Contract, which means that a failure to complete the agreement would result in termination. (Agreement, 27-2, at 1). Jaffey had no bargaining power and no negotiation opportunity in the formation of this adhesion contract—with no opportunity to view its terms, how could he? Though the adhesive nature of this agreement alone may not be enough to invalidate the Contract under Nevada law, this is not the only way in which the Agreement was procedurally unconscionable.

10

Second, the Agreement amounts to unfair surprise—it was never presented to or discussed with Plaintiff. (Ex. A at ¶¶ 9, 11.) Rather than discovering an arbitration agreement buried in a lengthy document that he had signed, Jaffey is presented with a separate Acknowledgement bearing his name that suggests he agreed to a contract *that he never received*. Even if the Court finds that Jaffey's typed name that appears on Defendant's separate Acknowledgement document constitutes his consent to the terms of the Agreement, Jaffey was given no opportunity to review those terms, either on his own or with an attorney. *Id.* By Jaffey's recollection, the only electronic signature that he provided to Del Taco was to certify that his application materials were correct—if this is how Del Taco claims to have obtained his consent to the arbitration agreement, it would constitute an unfair surprise to Jaffey. *See id.* at ¶ 10.

Third, Plaintiff had no opportunity to opt-out. Jaffey's typed name appears on the Acknowledgement, but he was given no chance to read the Agreement that he is purported to have acknowledged and Del Taco has provided no evidence that the typed name is somehow a signature. *Id.* at ¶ 9. Likewise, he was not given an opportunity to reject the terms, or opt out of mandatory arbitration, even if this would have meant losing his employment. Plaintiff had no meaningful choice as to whether his name would appear on the acknowledgement form, and similarly as to whether he would agree to arbitrate his claims against Del Taco.

Additionally, Defendant has not proven the necessary elements under *Dees* to demonstrate that this adhesion contract (if signed) is enforceable against Jaffey. Plaintiff has stated plainly that he had *no* notification of these contract terms, let alone plain and clear notification. *Id.* Jaffey further contends that he did not consent to this Agreement, understanding or otherwise, and Del Taco has provided no more than his typed name on a paper to demonstrate otherwise. *Id.*; (*see* Acknowledgement, Dkt. 27-3.) Finally, Del Taco has not shown how this agreement to waive all concerted action and the right to redress by a court for any claims against Defendant was within Jaffey's reasonable expectation. Indeed, his surprise at the existence of the Agreement suggests quite the contrary.

In short, the Court should find that the presentation of this adhesion contract to Jaffey—or, perhaps more appropriately, the lack thereof—was procedurally unconscionable. At a minimum, the Court should allow discovery as to how the alleged contract was presented.

### b. The Agreement contains several one-sided terms that make it substantively unconscionable.

While procedural unconscionability considers the presentation of the contract, substantive unconscionability focuses on the one-sidedness of the contract's terms. *Simms*, 157 F. Supp. 3d at 877 (citing *Green*, 96 P.3d at 1162-63). In other words, when procedural unconscionability (lack of negotiation, meaningful choice, etc.) is paired with contract terms that are unreasonably favorable to the drafting party, the contract as a whole becomes unconscionable and unenforceable. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

Though this Agreement is primarily unconscionable for its oppressive, adhesive, and surprising nature, the Agreement also contains several terms that are substantively unconscionable and unreasonably favor the defendant. Three provisions in particular create substantive unconscionability: (1) the class action waiver, (2) the imbalanced conditions and consideration, and (3) the actual and potential allocation of arbitration fees.

First, the class action waiver unreasonably favors Defendant because it deprives employees of their collective bargaining abilities and may discourage them from bringing claims against the Del Taco at all. The waiver applies not just to class actions, but to "any purported class or representative proceeding," which would include class arbitration as well. (Agreement, Dkt. 27-2, at ¶ 4.) While this provision undoubtedly protects Del Taco from collective claims for restitution by its signatory employees, the Ninth Circuit has held that the Supreme Court's decision in *Concepcion* forecloses any argument that a class action waiver *alone* renders an arbitration agreement unconscionable. *Carter v. Rent-A-Center, Inc.*, No. 16-15835, 2017 WL 6333769, at *1 (9th Cir. Dec. 12, 2017); *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013). Unfortunately for Defendant, the class action waiver is not the only provision of Contract that it drafted to its own exclusive benefit.

1    Indeed, the treatment of this Agreement as a condition of employment also creates an

2  unfair imbalance of consideration. In the Contract's preamble, Del Taco asks the employee to

3  recognize that "my employment is consideration for my acceptance of this Agreement."

4  (Agreement, Dkt. 27-2, at 1.) While this clause is framed to appear generous toward the

5  employee (*i.e.*, that Defendant promises to employ the signer if he or she agrees to arbitrate all

6  future claims), the reality is that Del Taco is hereby stating that it will cease to employ anyone

7  who fails to enter into the agreement. Placing this condition on employment, which plays no

8  small role in making this an adhesion contract, is substantively unconscionable because the

9  Agreement features no similar requirement of Defendant to agree to arbitrate its claims. While an

10 employee risks his job by not signing the agreement, Defendant risks nothing at all. This

11 disparity unreasonably favors Del Taco, the drafter of this form adhesion contract.

12    Third, both the actual and potential arrangement of fees and costs in the contract is

13 unfairly favorable to Defendant. The Agreement's "Arbitration Fees and Costs" clause begins by

14 noting that the employee will be required to pay an arbitration fee to initiate the proceedings,

15 with no regard for which party is making claims against the other. (Agreement, 27-2, at ¶ 7.)

16 Additionally, although the clause continues by stating that Defendant will advance the remaining

17 fees and arbitrator costs, it permits the arbitrator to later order a distribution of fees "in an

18 alternative manner," and it permits the arbitrator to award attorney's fees to the prevailing party.

19 (*Id.*) These terms are significantly more favorable to the company than the arbitration agreement

20 at issue in *Concepcion*, which provided consumers with cost-effective avenues to pursue smaller

21 claims and denied AT&T any ability to seek reimbursement of its attorney's fees. *Concepcion*,

22 563 U.S. at 336-37 (providing, inter alia, that AT&T would pay all fees and a $10,000 bonus if

23 the arbitrator awarded more than AT&T's last offer prior to the arbitration).

24    In short, because the arbitration agreement was presented to Jaffey (if at all) in a

25 procedurally unconscionable manner, and because the Contract contains several substantively

26 unconscionable clauses that unreasonably favor the Defendant, the Agreement is unconscionable

27 in its entirety and unenforceable against Plaintiff. Even assuming *arguendo* that Jaffey did enter

28

13

into this arbitration agreement—a preliminary issue that warrants factual discovery—the Court

should recognize the unconscionability of this agreement and deny Defendant's Motion to

Compel Arbitration.

## C.     THE COURT SHOULD ALLOW DISCOVERY INTO ARBITRATION-RELATED ISSUES.

At the very least, to the extent there is any question as to the enforceability of the

arbitration agreement, the Court should permit discovery. As explained in *Hesse v. Sprint*

*Spectrum, L.P.*:

> The Ninth Circuit Court of Appeals has held that "[t]he FAA provides
> for discovery and a full trial only if 'the making of the arbitration agreement or the
> failure, neglect, or refusal to perform the same be in issue.'" *Simula, Inc. v. Autoliv,
> Inc.,* 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4)). "[T]he making of
> the arbitration agreement is in issue if the plaintiff alleges that the arbitration clause
> was fraudulently induced, that one party had overwhelming bargaining power, or
> that the agreement does not exist." *Hibler v. BCI Coca–Cola Bottling Co. of
> L.A.,* No. 11–CV–298 JLS (NLS), 2011 WL 4102224, at * 1 (S.D. Cal. Sept.14,
> 2011) (citing *Granite Rock Co. v. Int'l Broth. of Teamsters,* —— U.S. ——, 130
> S.Ct. 2847, 2856, 177 L.Ed.2d 567 (2010); *Buckeye Check Cashing, Inc. v.
> Cardegna,* 546 U.S. 440, 445, 126 S. Ct. 1204, 163 L.Ed.2d 1038
> (2006); *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1269–70 (9th Cir.2006)).
> …
> Numerous courts have required discovery on such issues prior to ruling on a motion
> to compel arbitration. *See, e.g., Newton v. Clearwire Corp.,* No. 2:11–CV–00783–
> WMS-DAD, 2011 WL 4458971, at *6–*8 (E.D. Cal. Sept.23, 2011) (permitting
> limited pre-arbitration discovery regarding unconscionability); *Plows,* 2011 WL
> 3501872, at *5 (permitting four months to conduct discovery on the enforceability
> of the arbitration agreement); *Laguna,* 2011 WL 3176469, at *7 (permitting
> limited discovery, narrowly tailored to determining whether arbitration clause is
> enforceable under state law); *Hamby v. Power Toyota Irvine,* 798 F.Supp.2d 1163,
> 1164–65 (S.D.Cal.2011) (permitting limited pre-arbitration discovery on issue of
> unconscionability); *Larsen v. J.P. Morgan Chase Bank, N.A.,* Nos. 10–12936, 10–
> 12937, 2011 WL 3794755, at *1 (11th Cir. Aug.26, 2011) (vacating district court
> order which denied a motion to stay pending arbitration and remanding with
> instructions to reconsider in light of the Supreme Court's decision
> in *Concepcion* and that "discovery is to be limited to issues bearing significantly
> on the arbitrability of this dispute until the question of arbitrability has been
> decided.").

No. C06-0592JLR, 2012 WL 37399, at *2 (W.D. Wash. Jan. 9, 2012).

1   As indicated above, discovery is needed regarding the enforceability of the arbitration

2   agreement, including information regarding whether Jaffey was ever presented with or agreed to

3   arbitrate his claims. This includes such questions as (1) whether any representatives of Del Taco

4   discussed arbitration with Jaffey, (2) whether Jaffey's typed name appearing on the

5   Acknowledgement can constitute his consent to the Agreement, (3) who is responsible for the

6   appearance of Jaffey's name on the Acknowledgment, and (4) how Del Taco claims to have

7   obtained Jaffey's consent to the Agreement. As such, if the Court is not inclined to deny the

8   Motion to Compel Arbitration outright, at the very least the Court should allow discovery with

9   respect to issues affecting the enforceability of the arbitration provision.

10  **IV.    CONCLUSION**

11         Defendants' Motion to Stay the Proceedings, or in the Alternative, to Compel Arbitration

12  and Dismiss the Action should be denied. The motion to stay is unwarranted because the

13  application of *Morris* to this action is speculative at best, and staying this action would cause

14  undue delay with time that the parties could spend resolving factual disputes. The motion to

15  compel arbitration should likewise be denied because the Court must first determine whether

16  Plaintiff entered into an agreement to arbitrate, and, in any event, the Agreement presented by

17  Del Taco was both procedurally and substantively unconscionable. Finally, at a minimum

18  discovery should be permitted.

19                                   Respectfully Submitted,

20  Dated: January 5, 2018

21

22                                   PLAINTIFF Michael Jaffey,

23

24                                   By:    /s/ Steven L. Woodrow

25                                   One of Plaintiff's Attorneys

26                                   Steven L. Woodrow*
                                     swoodrow@woodrowpeluso.com
27

28

                                           15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
999 E Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: 720.213.0675
Fax: 303.927.0809

Marc P. Cook
Cook and Kelesis, LTD
517 S. 9th St.
Las Vegas, NV 89101
(702) 737-7702
(702) 737-7712 (fax)
mcook@bckltd.com

*Attorneys for Plaintiff and the Putative Class*

*\* pro hac vice*

1
2
**CERTIFICATE OF SERVICE**

3       I, Steven L. Woodrow, an attorney, hereby certify that I served the foregoing papers by
4  causing true and accurate copies of such papers to be transmitted to all counsel of record through
5  the Court's electronic filing system on January 5, 2018.

6
7           /s/ Steven L. Woodrow
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28